**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

UNITED STATES OF AMERICA *ex rel.* :
P AND E CONSTRUCTION, LLC and :
P AND E CONSTRUCTION, LLC, in :
its own capacity, :
  :
      Plaintiffs, :
  :
v. :
  :     CASE NO.: 1:16-cv-33 (WLS)
HDJ SECURITY, INC. *et al.*, :
  :
      Defendants. :
_____:

## ORDER

Before the Court is Defendants James A. Clark and Enola Contracting Services' Motion to Amend their Answer and Defenses. (Doc. 24.) The Plaintiff filed a response (Doc. 26), and Defendants replied (Doc. 27). The Court finds that the Motion is now ripe for review.

## PROCEDURAL HISTORY

The Complaint in the above-styled case was filed on February 19, 2016. (Doc. 1.) All Defendants filed answers to the Complaint. (Docs. 11, 12, 17.) On June 16, 2016, the Court issued a Scheduling and Discovery Order setting the deadline to amend pleadings for July 12, 2016. (Doc. 21.) On June 21, 2016, Defendants HDJ Security and Hartford Fire Insurance Company amended their answers with consent of the Plaintiffs. (Docs. 22, 23.) On July 12, 2016, the deadline for amending pleadings, Defendants Clark and Enola Contracting Services (hereinafter "Enola") filed the presently pending Motion for Leave to File an Amended Answer. (Doc. 24.) The deadline for completing discovery in this case is December 12, 2016. (Doc. 21.)

## FACTUAL BACKGROUND

The Court herein makes no factual findings regarding the allegations in Plaintiffs' complaint or Defendants' proposed answer and counterclaims. Rather, the Court attempts to summarize both for purposes of determining whether Defendants' amended answer should be allowed. According to Plaintiffs' complaint, their claims arise from a September 29, 2012 contract awarded to Defendant HDJ by the Naval Facilities Engineering Command for construction services and materials for a project at the Marine Corps Logistics Base (MCLB) in Albany, Georgia. (Doc. 1 at 3.) Defendant Hartford Fire Insurance Company (hereinafter "Hartford") issued a payment bond for the project, "making it jointly and severally bound with JDF for paying claims" related to the performance of the project. (*Id.*) HDJ also contracted with Defendant Enola Contracting Services (hereinafter "Enola") "to furnish all labor and materials and perform all work" required by the contract. (*Id.* at 4.) On October 10, 2012, Enola and Plaintiff P&E Construction (hereinafter "P&E") entered into a written subcontract in which P&E was assigned full responsibility for providing labor and materials for the MCLB project. (*Id.*)

On December 12, 2012, Enola informed P&E that HDJ would retain 5% of each billing for the project and pay Enola the remainder. The contract between P&E and Enola required Enola to pay P&E one half of all "profits," which P&E alleges the Parties understood to mean one half "of all payments received from HDJ." (*Id.*) P&E alleges that it timely performed its duties under the contract. (*Id.* at 5.) P&E further alleges that Enola tendered one half of each of the first five payments it received from HDJ to P&E. However, P&E alleges that Enola owes to P&E $279,476.98 for three subsequent payments made by HDJ to Enola. (*Id.*)

P&E also alleges that in February 2014, P&E loaned Defendant Enola "and/or" Defendant Clark $150,000 in order "to permit Enola to increase its reserves in furtherance of its business operations." (*Id.*) P&E alleges that some or all of the loan proceeds were used to pay for work on the MCLB project. (*Id.*) On April 28, 2015, P&E allegedly notified HDJ and Enola in writing that it had not received full payment under the subcontract. (*Id.*) To

date, Enola and HDJ have not tendered the full amount owed under the contract to P&E. (*Id.* at 6.) Further, Enola has not repaid P&E for the loan. (*Id.*)

In their complaint, Plaintiffs assert a Miller Act, 40 U.S.C. § 3131 *et seq.*, claim against Hartford[1]; a breach of contract claim against Enola; a breach of loan agreement claim against Enola; an unjust enrichment claim against HDJ; a fraud/conversion claim against Enola and Clark; and a breach of covenant of good faith and fair dealing claim against Enola. (*Id.* at 6-10.)

Enola and Clark seek to amend their answer to assert the affirmative defense of setoff. Enola further seeks to add four counterclaims against Plaintiffs. In the proposed amended answer and counterclaim complaint, Defendant Enola alleges that on February 23, 2009, "Enola entered into a Joint Venture Agreement with P&E to perform work for a project at the Carl Vinson VA Medical Center." (Doc. 27-1 at 18.[2]) This agreement related to the replacing of gable roofs at the Medical Center. (*Id.*) Enola alleges that under the terms of the agreement, P&E was to pay Enola 49% of the profits from the project. (*Id.*) Also on February 23, 2009, Enola and P&E entered into a separate Joint Venture Agreement for replacing "CH & HW MAINS" in Building Four of the Medical Center. (*Id.*) Under this agreement, P&E was to pay Enola 49% of the profits from the project. (*Id.*) Enola alleges that it performed all of its obligations under these two agreements but that P&E has not yet paid Enola its share of the profits, totaling approximately $100,000 plus interest. (*Id.* at 18-19.)

After entering into these agreements, "Enola purchased a 49% ownership interest in P&E and Defendant Allen Clark became vice-president of P&E." (*Id.* at 19.) As vice president of P&E, Clark "negotiated a subcontract between P&E and Brasfield and Gorrie LLC" to pay $10,757,273 in connection with a project at the Orlando Veterans Affairs Medical Center. (*Id.* at 19.) Enola asserts that Eric Hogan, the 51% owner of P&E, and Clark agreed that irrespective of their 49%-51% ownership split, Enola would receive 50% of

---

[1] The Miller Act governs bonds for contractors who contract to perform work on federal buildings. 40 U.S.C. § 3131.

[2] The Court herein refers to the proposed amended answer filed by Defendants at Doc. 27-1 because it contains additional allegations that are not contained in the initially proposed amended answer filed at Doc. 24-1.)

P&E's profits from the Orlando VA project because Clark had negotiated the subcontract on his own. (*Id.*) Enola alleges that P&E "has failed to pay Enola 50% of the profits" from this project, totaling approximately $130,000 plus $15,000 in travel and expenses. (*Id.*)

In 2012, Enola transferred its shares of P&E to Eric Hogan. (*Id.*) In exchange, "P&E agreed to pay Enola 50% of the profits for projects started when Enola had an ownership interest in P&E, including, but not limited to, the Brasfield and Gorrie LLC subcontract" for the Orlando VA project. (*Id.* at 19-20.) Subsequently, Enola and P&E collaborated on several construction projects, including the MCLB project that is the subject of Plaintiffs' complaint, a project at the VA Medical Center in Louisville, Kentucky, and a project at the John H. Glenn NASA Research Center in Cleveland, Ohio. (*Id.* at 20.) Enola alleges that P&E agreed to pay Enola $100,000 "for supporting bonds" for the Robley Rex VA Medical Center in Louisville, Kentucky project but to date has not paid the amount promised. (*Id.*) Enola further alleges that P&E agreed to pay Enola $70,000 for supporting bonds for the NASA project in Cleveland, but to date has failed to pay that amount. (*Id.*)

Enola asserts that P&E owes Enola an amount in excess of $415,000 in connection with the Carl Vinson VA, Orlando VA, Louisville VA, and NASA projects referenced in the proposed counterclaim complaint. (*Id.* at 21.) Enola asserts that even if it owes P&E money, as P&E alleges, that amount should be offset by the amount P&E owes Enola. (*Id.*) Count One of Enola's proposed counterclaim complaint is a breach of contract claim against P&E based on the Carl Vinson V.A. Medical Center agreements. (*Id.*) Count Two asserts a breach of contract claim against P&E based on the subcontract with Brasfield & Gorrie for work on the Orlando Veterans Affairs Medical Center. (*Id.* at 22.) Count Three of the proposed counterclaim complaint asserts a breach of contract claim against P&E based on the agreement between P&E and Enola concerning the Louisville VA Medical Center project. (*Id.* at 23-24.) Count Four of the proposed counterclaim complaint asserts a breach of contract claim against P&E based on the agreement between P&E and Enola regarding the Cleveland, Ohio NASA project. (*Id.* 24-25.) In total, Enola seeks a judgment against P&E in the amount of $415,000 plus interest and attorney's fees and costs. (*Id.* at 25.) The four

proposed counterclaim counts demand $100,000, $145,000, $100,000, and $70,000 respectively. (*Id.*)

## DISCUSSION

Defendants Clark and Enola move to amend their answer to include the additional affirmative defense of setoff. Enola further moves to amend the answer to include four counterclaims for breach of contract against Plaintiff. Federal Rule of Civil Procedure 15(a)(2) provides that after the initial twenty-one day deadline has expired, a party may only "amend its pleadings with the opposing party's written consent or the court's leave." Courts should freely grant leave to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[U]nless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) (quoting *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). In other words, where a party seeks leave to amend before the deadline to amend has elapsed, the Court must identify a substantial reason to justify denying the motion. *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993). Substantial reasons include undue delay, bad faith, or dilatory motive, among others. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A district court may also deny leave to amend "when such amendment would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004).

Plaintiffs do not oppose an amendment to include the additional defense of setoff. (Doc. 26 at 2.) Thus, having received the written consent of the opposing parties, Defendants Enola and Clark are entitled to amend their answer to include the additional defense of setoff without receiving leave from the Court. Fed. R. Civ. P. 15(a)(2). Defendants' Motion for Leave to Amend (Doc. 24) is therefore **GRANTED-IN-PART** as to the setoff defense.

However, Plaintiffs oppose Defendants' Motion to Amend to the extent Enola seeks to add four new counterclaims. Ordinarily, because Enola moved to amend the answer on the day the deadline to amend pleadings set forth in the Court's Scheduling and Discovery Order expired, the Court would simply comply with its obligation to freely grant leave to amend, particularly where, as here, over four months of discovery remain. However,

Plaintiffs argue not just that they will be prejudiced and these proceedings will be prolonged by the addition of Enola's counterclaims but also that the Court lacks supplemental and subject matter jurisdiction over those counterclaims. Though such arguments would normally be raised in a motion to dismiss, the Court herein considers them because they relate to the question of whether Enola's proposed counterclaim amendments would be futile. *Hall*, 367 F.3d at 1263 (holding that leave to amend may be denied where the amendment would be futile).

**I.      Whether Enola's Counterclaims Are Compulsory or Permissive**

Federal Rule of Civil Procedure 13 distinguishes between compulsory and permissive counterclaims. A compulsory counterclaim is one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and "does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). A permissive counterclaim is any counterclaim against an opposing party that is not compulsory. Fed. R. Civ. P. 13(b). To determine whether a counterclaim is compulsory or permissive, the Eleventh Circuit employs the "logical relationship test." "Under this test, there is a logical relationship when 'the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant.'" *Republic Health Corp. v. Lifemark Hosps. of Fla., Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985) (quoting *Plant v. Blazer Fin. Servs., Inc.*, 595 F.2d 1357, 1361 (5th Cir. 1979)).

Enola explains that Enola and P&E's "dispute grew out of a series of transactions" and their relationship "was more complex than a simple contractor and subcontractor relationship." (Doc. 24 at 2.) Enola does not explicitly address whether its counterclaims are compulsory or permissive. Enola asserts that the Court has supplemental jurisdiction over its counterclaims to the extent the Court has jurisdiction over Plaintiffs' claims, citing 28 U.S.C. § 1367(a), which allows supplemental jurisdiction over claims that form part of the same case or controversy as claims over which the court has original jurisdiction. This argument suggests that Enola believes its claims arise from the "same operative facts" as Plaintiffs' claims. However, Enola also suggests in its reply brief that its counterclaims are permissive

but that the Court may still exercise supplemental jurisdiction over them. (*See* Doc. 27 at 4 (quoting *Vernell v. Nuvell Credit Co., LLC*, No. 2:15-cv-674, 2016 WL 931104 at *3 (M.D. Fla. March 1, 2016).) Plaintiffs argue that setoff claims are generally regarded as permissive rather than compulsory, citing Georgia law rather than federal law. (Doc. 26 at 6-7.)

Applying the logical relationship test, the Court finds that Enola's counterclaims arise out of different agreements, facts, state laws, circumstances, and time periods than the claims in Plaintiffs' complaint. Plaintiffs' claims and Enola's counterclaims do not involve the same operative facts. For that reason, the Court concludes that each of Enola's proposed counterclaims is a permissive counterclaim.

## II.    Whether the Court has Subject Matter Jurisdiction over Enola's Counterclaims

Plaintiffs argue that the Court does not have supplemental jurisdiction under 28 U.S.C. § 1367(a) over Enola's proposed counterclaims, and that even if it does, it should decline to exercise supplemental jurisdiction over those claims. (Doc. 26 at 2-6.) Plaintiffs additionally argue that Count Four of Enola's proposed counterclaims lacks an independent jurisdictional basis because the amount in controversy alleged does not exceed $75,000 so as to trigger diversity jurisdiction under 28 U.S.C. § 1332 and does not raise a federal question under 28 U.S.C. § 1331. (*Id.* at 6-8.) In reply, Enola argues that the Court has original diversity jurisdiction over each of its counterclaims and that the questions of whether the Court can and should exercise supplemental jurisdiction over the counterclaims need not be reached. (Doc. 27 at 6.)

There is a split within the Eleventh Circuit regarding whether the enactment of the current version of 28 U.S.C. § 1367 removed the requirement that a party assert an independent jurisdictional basis for all permissive counterclaims. *See Cruz v. Winter Garden Realty, LLC*, No. 6:12-cv-1098, 2012 WL 6212909 at *4 (M.D. Fla. Nov. 27, 2012) (collecting cases exemplifying the split opinions within the Eleventh Circuit). The Court notes that there is substantial case law addressing whether courts should exercise supplemental jurisdiction over setoff counterclaims specifically. However, that case law concerns setoff counterclaims that do not have an independent jurisdictional basis and necessarily beg the

question of whether courts should exercise supplemental jurisdiction over them. *See Taylor v. L&P Building Supply of Las Cruces, Inc.*, No. CIV 14-0989, 2015 WL 7803614 at *5-8 (D. N.M. Oct. 27, 2015) (collecting cases addressing whether courts should exercise supplemental jurisdiction over setoff counterclaims that lack an independent jurisdictional basis). Nevertheless, where there is an independent jurisdictional basis for a permissive counterclaim, including setoff counterclaims, the Court need not invoke its supplemental jurisdiction.

28 U.S.C. § 1332 confers subject matter jurisdiction in controversies with an amount in controversy exceeding $75,000 in value that are between citizens of different states. In its proposed amended answer and counterclaim, Enola alleges that it is a citizen of Florida. (Doc. 27-1 at 17.) P&E's complaint alleges that Enola's president and sole shareholder, Allan Clark, is a citizen of Florida. (Doc. 1 at 3.) Enola also alleges that P&E and its sole member, Eric Hogan, are both citizens of Georgia. (Doc. 27-1 at 17.) Thus, there is complete diversity between the parties to the counterclaims. Furthermore, all but the fourth counterclaim demand more than $75,000. Enola argues that its claims may be aggregated so as to exceed the $75,000 amount in controversy threshold, just as a plaintiff's claims could be. (Doc. 27 at 7-8.) Indeed, the Court agrees that Enola's claims may be aggregated for the purpose of determining the amount in controversy, noting that other district courts have so held. *Rampart Hydro Servs., L.P. v. Zurich Am. Ins. Co.*, No. 2:04-cv-434, 2006 WL 2469109 at *2-3 (W.D. Penn. Aug. 25, 2006); *McKnight v. Halliburton Oil Well Cementing Co.*, 20 F.R.D. 563, 564 (N.D. W. Va. 1957). As the court in *Rampart* noted, "[If] the Defendants had won the race to the courthouse, they clearly would have been able to aggregate [their] claims." 2006 WL 2469109 at *3 (quotation omitted). And as the court in *McKnight* held, "Reason and logic would seem to indicate that, in order to avoid a multiplicity of actions and settle the entire controversy between these parties in one action, the defendant should be permitted to aggregate the [compulsory and permissive] claims here in question to make up the jurisdictional amount." 20 F.R.D. at 565. The Court finds that the same logic applies here. Had Enola won the race to the courthouse, it would have been able to aggregate its claims in order to satisfy § 1332's amount in controversy requirement.

The Court therefore finds that it has subject matter jurisdiction over each of Enola's counterclaims under 28 U.S.C. § 1332. The Court further finds that Enola has established an independent jurisdictional basis for each of its permissive counterclaims and that the Court need not consider whether it can or should exercise supplemental jurisdiction over the claims. The Court further finds that Enola's amendment to include its counterclaims would not be futile based on the jurisdictional reasons asserted by P&E.

## III.    Whether the Court Should Grant Enola Leave to Amend Its Answer to Include the Counterclaims

The Court has already set forth the standard for allowing leave to amend pleadings prior to the expiration of the deadline set forth in the Court's scheduling and discovery order. This standard requires "a substantial reason to deny leave to amend." *Burger King Corp.*, 169 F.3d at 1319. Substantial reasons include undue delay, bad faith, or dilatory motive, among others. *Foman*, 371 U.S. at 182.

The Court again notes that the deadline for completing discovery in this case is December 12, 2016, leaving over four months for the Parties to conduct discovery as to Enola's new counterclaims. (Doc. 21.) Plaintiffs have pointed to no evidence of bad faith or undue delay. (*See* Doc. 26.) Indeed, Clark and Enola timely filed their motion for leave to amend before the expiration of the deadline to do so set forth in the Court's scheduling and discovery order. While the addition of four counterclaims, each involving different contracts requiring performance in different states, could possibly prolong this litigation, the Court finds that Enola has timely sought to add those counterclaims and that, ultimately, allowing the Parties to litigate all of the disputes between them is in the interests of efficiency and justice. The Court finds no substantial reason for denying Clark and Enola's Motion for Leave to Amend their Answer. The Court therefore **GRANTS-IN-PART** Clark and Enola's Motion for Leave to Amend the Answer (Doc. 24) to the extent Enola seeks to add four counterclaims against P&E.

## CONCLUSION

For the reasons stated herein, the Court **GRANTS** Clark and Enola's Motion for Leave to Amend the Answer (Doc. 24). Enola and Clark are **ORDERED** to file their proposed amended answer (Doc. 27-1) as their Amended Answer on the docket **immediately upon entry of this Order**. Finally, although over four months remain in the discovery period, the Court reminds the Parties that should an extension of the discovery period become necessary, the Parties should so move the Court as soon as possible.

**SO ORDERED**, this 5th day of August, 2016.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**